UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TROPIC POLLO I CORP. d/b/a :
TROPIC POLLO RESTAURANT, :
 :
                      Plaintiff, :
 : **MEMORANDUM AND ORDER**
       -against- :
 : 09-CV-1388 (DLI)
 :
NATIONAL SPECIALTY INSURANCE :
COMPANY, INC., :
 :
                      Defendant. :
----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Tropic Pollo I Corp., d/b/a Tropic Pollo Restaurant, filed this action against defendant National Specialty Insurance Company, Inc. ("NSIC" or "Defendant") on March 9, 2009. The parties cross-moved for summary judgment pursuant to Fed. R. Civ. P. 56 on June 25, 2010. For the reasons set forth below, defendant's motion is granted and plaintiff's motion is denied.

## BACKGROUND

Plaintiff owns a restaurant that sells rotisserie chickens. National Specialty Insurance Company issued a policy of property insurance ("policy") to plaintiff that insured against *inter alia*, risk of fire. (Pl.'s 56.1 Stmt. ¶ 1; Def.'s 56.1(b) Stmt. ¶ 1.) On April 12, 2008, a greasy chicken ignited in plaintiff's restaurant causing fire and extensive damage. (Pl.'s 56.1 Stmt. ¶¶ 16, 17; Def.'s 56.1(b) Stmt. ¶¶ 16,17.) Plaintiff filed a claim under the policy to recover his losses. (Compl. ¶ 8.) In response, NSIC sent a claims adjuster on April 14, 2008, to observe the damage. (Def.'s 56.1 Stmt. ¶ 12; Pl.'s 56.1(b) Stmt. ¶ 12.) The claims adjuster recommended that Mr. LeBow, a cause and origination specialist, further inspect plaintiff's restaurant. (Ward

1

Dep. 64:2-8.) NSIC followed the claim adjuster's recommendation, and on April 16, 2008, Mr. LeBow conducted his initial investigation. (Def.'s 56.1 Stmt. ¶ 13; Pl.'s 56.1(b) Stmt. ¶ 13.)

Mr. LeBow examined, among other things, the exhaust filters, and the chemical fire suppression system. The filters, which attach to the hood over the rotisserie, sieve the smoke before it enters the ducts. (LeBow Dep. 35:13-26; 37:13-22.) Mr. LeBow concluded that after the chicken ignited, the fire traveled through these four filters, consuming one of them, and then spread through the entire duct system. (LeBow Dep. 35:13-22.) As for the suppression system, Mr. LeBow observed that the system valve was "jammed." (LeBow Dep. 29:21-22.) Specifically he observed that the suppression nozzle at the duct entry point above the rotisserie was twisted in such a way that, had it activated, it would have inadequately dispersed suppressant. (LeBow Dep. 20:16-25; 21:1-9.) However, the inner workings of the suppression system were beyond Mr. LeBow's expertise, as such he could not make any conclusive determinations about the affect of this "jam" on the fire damage. (LeBow Dep. 21:10-19.) For this reason, the investigator told plaintiff that an engineer would be coming to look at the fire remains and that plaintiff should not touch anything. (Def.'s 56.1 Stmt. ¶ 14; Pl.'s 56.1(b) Stmt. ¶ 14.) Plaintiff responded by closing his restaurant to await further inspection. (Def.'s 56.1 Stmt. ¶ 14; Pl.'s 56.1(b) Stmt. ¶ 14.)

Then, according to defendant, the NSIC claims adjuster reached out to potential subrogation targets, including the manufacturer of the chemical-fire suppression system. (Def.'s 56.1 Stmt. ¶ 15.) The defendant attempted to organize a joint inspection with all parties, targets, and engineers on May 14, 2008; however, plaintiff was unavailable on that date, so the meeting was rescheduled to May 22, 2008. (Pl.'s 56.1 Stmt. ¶ 23-24; Def.'s 56.1(b) Stmt. ¶ 23-24; Bora Aff. ¶ 21.) The May 22 meeting was also rescheduled, to May 30, but this time because the NSIC-affiliated engineer was unavailable. (Pl.'s 56.1 Stmt. ¶ 25; Def.'s 56.1(b) Stmt. ¶ 25.) By

May 30, approximately seven weeks after the initial incident, plaintiff had removed the damaged ductwork, replaced the fire suppression system and completely cleaned the fire scene. (Def.'s 56.1 Stmt.¶ 22; Pl.'s 56.1(b) Stmt. ¶ 16.) Defendant contends that by cleaning up the fire scene and replacing the suppression system, it was unable to complete its investigation. Accordingly, NSIC denied plaintiff's request for coverage. (Denial Letter, annexed to Leavy Decl., as Ex. J.) Plaintiff initiated this action on March 9, 2009 demanding payment for his loss. Defendant, asserts four affirmative defenses including that plaintiff: (1) impaired defendant's subrogation rights; (2) failed to clean its duct filters in compliance with the Protective Safeguards Endorsement provisions of the policy; (3) failed to preserve property for inspection; and (4) has no proof of an insurable interest in improvements and betterments.

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396,

400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," FED. R. CIV. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988)).

Under New York law,[1] "'a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning.'" *Gesualdi v. Laws Constr. Corp.*, 2010 WL 5185067, at *3 (S.D.N.Y. Dec. 22, 2010) (quoting *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008)). Thus, "'the initial question for the court on a motion for summary judgment with respect to a contract claim is whether the contract is unambiguous with respect to the question disputed by the parties.'" *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) (quoting *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010)). This inquiry "is a question of law for the court." *Law Debenture Trust*, 595 F.3d at 465. "The test for ambiguity is whether the language in the insurance contract is susceptible of two reasonable interpretations" *MDW Enters. v CNA Ins. Co.*, 4 A.D.3d 338, 340-41 (2d Dep't 2004) (quotations omitted).

---

[1] The parties have not cited to any choice of law provision in the insurance policy. Because they rely on New York law in their briefs, however, they have implicitly agreed that New York law governs, and this court need not engage in a choice of law inquiry.

## II. Subrogation Rights

### A. The Language of the Policy is Clear and Unambiguous

NSIC claims that plaintiff impaired its subrogation rights in violation of the plain language of the policy. Included in the policy is a "Commercial Property Conditions" clause. Among those conditions is the "Transfer of Rights of Recovery Against Others to Us," which states:

> If any person or organization to or for whom we may make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after the loss to impair them.

(Commercial Property Conditions, annexed to Leavy Decl., as Ex. E.) Although broad, the requirements that plaintiff do "everything necessary" to secure defendant's subrogation rights and "do nothing after the loss" to impair those rights are clear and unambiguous. *See Seaport Park Condo. v. Greater New York Mut. Ins. Co.*, 39 A.D.3d 51, 54 (1st Dep't 2007). Accordingly, this dispute may be decided upon summary judgment.

### B. Payment is Not Required

Plaintiff argues that it is not in violation of the subrogation clause because defendant has not made any payments under the policy and, therefore, the defendant has no subrogation rights that can be impaired. Subrogation is the principle by which an insurer, having paid losses of its insured, accrues the rights of the insured against a third party, who may responsible for the loss. *Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 581 (1995). In this matter, the issue of whether plaintiff impaired defendant's actual subrogation rights is more appropriately defined as whether plaintiff followed his contractual obligations under the policy in light of defendant's future right to subrogation. In this way, plaintiff need not wait for defendant's actual subrogation rights to accrue, because the policy terms place plaintiff on notice that there was a present duty to exercise

due diligence. It would make no sense to require an insurance company to pay a claim if its subrogation rights are already impaired. Thus, the policy's requirements are a condition precedent to recovery, an interpretation consistent with the New York law under which this claim arises. *See Seaport*, 39 A.D.3d at 54 (where the court interpreted plaintiff's failure to preserve the property in question as the contravention of a condition precedent, thus expressly precluding recovery.) The court now turns to the question of whether plaintiff complied with the Commercial Property Conditions clause.

### C. Plaintiff Violated the Transfer of Rights Clause

It is undisputed that by May 30, approximately seven weeks after the initial incident, plaintiff had removed the damaged ductwork, replaced the fire suppression system and completely cleaned the fire scene. (Def.'s 56.1 Stmt.¶ 22; Pl.'s 56.1(b) Stmt. ¶ 16.) Since this action prevented a full inspection to be completed by the engineers and subrogation targets, plaintiff's actions impaired defendant's subrogation rights by, *e.g.*, affecting defendant's ability to meet its burden of proof in future litigation against the third-party targets. Moreover, Plaintiff's failure to obtain the approval of defendant prior to ripping out the ductwork and replacing the suppression system (Def.'s 56.1 Stmt.¶ 20; Pl.'s 56.1(b) Stmt. ¶ 20), also violated his obligation to do "everything necessary" to preserve defendant's rights. The court concludes, therefore, that plaintiff failed to comply with the plain terms of the policy.

Plaintiff argues that it did not violate the Transfer of Rights clause because NSIC had "a full and fair opportunity to conduct a full scientific and thorough inspection" of the fire damage. (Def.'s Brief at 4.) However, there is no such limitation on plaintiff's duty under the policy and, therefore, plaintiff's argument is rejected. *See Seaport*, 39 A.D.3d at 55 ("The interpretation of an insurance contract, as noted, presents a question of law and a court is not free to make or vary the

6

contract of insurance to accomplish its notions of abstract justice or moral obligation."). Plaintiff also argues that the defendant waited an inordinate amount of time (*i.e.*, from April 12, 2008, the date of loss, until May 30, 2008), to conduct the reinspection, while plaintiff remained out of business, and that this delay necessitated, and somehow sanctioned, the cleanup. This argument fails for several reasons. First, plaintiff's obligation to protect defendant's rights in this situation was complete and was not qualified by time or delay. *Id.* Plaintiff could have bargained for such a limitation in the policy. Second, the May 14 reinspection was adjourned the first time because plaintiff was unable to attend. (Bora Aff. ¶ 21.) Third, plaintiff has not explained how seven weeks is an inordinate amount of time under the circumstances presented by this case, particularly in light of the mores and business practices of the insurance industry, and nothing in the record suggests so. In fact, the record suggests that defendant was diligently conducting the investigation. Lastly, if plaintiff wanted to guard against lost profits, it could have bargained for such a provision in the policy.[2] Accordingly, plaintiff is unable to recover under the policy, and summary judgment is granted in favor of the defendant.

## CONCLUSION

For the reasons set forth above, the defendant's motion is granted, the plaintiff's motion is denied, and summary judgment is entered in favor of the defendant.

SO ORDERED
DATED: Brooklyn, New York
       July 8, 2011

_____/s/_____
DORA L. IRIZARRY
United States District Judge

---

[2] Notably, plaintiff does not argue that the policy is either procedurally or substantively unconscionable, nor does anything in the record indicate unconscionability.